**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

WILLIAM C. SEVERS, JR.,     :    Civil Action No. 05-4508(NLH)
                   :
       Plaintiff,     :
                   :
     v.             :    **OPINION**
                   :
CUMBERLAND COUNTY JAIL,    :
                   :
       Defendant.     :
                   :

**APPEARANCES:**

William C. Severs, Jr.
SBI #188285b
New Jersey State Prison
P.O. Box 861
Trenton, NJ 08625

    *Pro se*

Steven L. Rothman, Esquire
Lipman, Antonelli, Batt, Dunlap, Wodlinger & Gilson
110 N. Sixth Street
PO Box 729
Vineland, NJ 08362-0729

    *Attorney for Defendant*

**HILLMAN**, District Judge

    This matter has come before the Court on defendant's motion for summary judgment.  Also before the Court is plaintiff's motion for leave to file an amended complaint.  For the reasons expressed below, defendant's motion will be granted, and plaintiff's motion will be denied as moot.

<u>BACKGROUND</u>

    On September 12, 2005, plaintiff, William C. Severs, Jr., filed a complaint with this Court requesting that defendant,

Cumberland County Jail, provide him with an immediate hernia operation, as well as compensate him for his pain and suffering due to defendant's violation of his Eighth Amendment right to be free from cruel and unusual punishment.  Plaintiff also requested that the Court investigate defendant's opening of his legal mail outside his presence, as well as defendant's restriction of his access to the jail's law library.

On September 22, 2005, pursuant to the *pro se* complaint screening process required by 28 U.S.C. § 1915A, the Court dismissed plaintiff's claim regarding access to the law library, but permitted plaintiff's claims concerning his medical care and legal mail to proceed.

After being found guilty following a jury trial in New Jersey State Court that began on August 15, 2005, plaintiff was sentenced on October 21, 2005.  He was then transferred from Cumberland County Jail to New Jersey State Prison in Trenton on November 10, 2005.  It appears that plaintiff filed his complaint following his trial, but prior to his sentencing and transfer to the state prison.

Defendant has moved for summary judgment on both of plaintiff's claims.  Plaintiff has opposed this motion, and he has also sought to amend his complaint to remove his requests for immediate relief, and to add specific dollar amount damages for his alleged constitutional violations.

2

**DISCUSSION**

**A.   Jurisdiction**

Because plaintiff has brought claims pursuant to 42 U.S.C. § 1983 for alleged violations of his constitutional rights, this Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1331.

**B.   Summary Judgment Standard**

Summary judgment is appropriate where the Court is satisfied that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(c).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor." Marino

3

v. Industrial Crating Co., 358 F.3d 241, 247 (3d Cir.
2004)(quoting Anderson, 477 U.S. at 255).

Initially, the moving party has the burden of demonstrating
the absence of a genuine issue of material fact.  Celotex Corp.
v. Catrett, 477 U.S. 317, 323 (1986).  Once the moving party has
met this burden, the nonmoving party must identify, by affidavits
or otherwise, specific facts showing that there is a genuine
issue for trial.  Id.  Thus, to withstand a properly supported
motion for summary judgment, the nonmoving party must identify
specific facts and affirmative evidence that contradict those
offered by the moving party.  Anderson, 477 U.S. at 256-57.  A
party opposing summary judgment must do more than just rest upon
mere allegations, general denials, or vague statements.  Saldana
v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).

C.   **Analysis**

1.   **Whether plaintiff has sued the proper defendant**

Before plaintiff's substantive claims are analyzed, it must
first be determined whether plaintiff has sued the proper
defendant.  Plaintiff has asserted his 42 U.S.C. § 1983 claims
against Cumberland County Jail.  Plaintiff has not brought his
action against any other defendant.  Plaintiff only suing
Cumberland County Jail is a problem because a county jail cannot
be sued under § 1983 since it is not a "person."  Harvey v.
Ridge, 2007 WL 674710, *6 n.7 (D.N.J. Feb. 28, 2007) (citing

4

Fischer v. Cahill, 474 F.2d 991, 992 (3d Cir. 1973); McLeod v.
Monmouth County Correctional Institution, 2006 WL 572346, No. 05-
4710 (AET) at * 4 (D.N.J. Mar. 8, 2006) (collecting cases holding
county jail not an entity amenable to suit under § 1983)).
Consequently, a strict reading of plaintiff's complaint warrants
the dismissal of the action.  Because, however, (1) plaintiff is
proceeding *pro se*, and *pro se* complaints are to be construed
liberally, (2) this two and a half year-old case is at the
summary judgment stage, (3) defendant did not raise this issue,
and (4) this deficiency was not identified in the *pro se*
complaint screening process, the Court will undertake the task of
construing plaintiff's complaint to determine whether he has
already pleaded the proper defendant or defendants.

One possible proper defendant is Cumberland County.  If the
Court were to determine that plaintiff's claims are against
Cumberland County, the County is only amendable to suit under §
1983 if plaintiff has alleged a policy or practice of the County
with regard to his medical treatment, or with regard to the
opening of legal mail.  Goodrich v. Clinton County Prison, 214
Fed. Appx. 105, 113 (3d Cir. 2007) (citing Beck v. City of
Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996)).  Plaintiff,
however, has not made any such allegations.[1]  As a result,

_____

[1]A county cannot be subjected to § 1983 liability on a
theory of respondeat superior. City of Canton v. Harris, 489 U.S.
378, 392 (1989).

plaintiff's complaint cannot be construed as naming Cumberland County as a defendant.

Another possible proper defendant is the prison warden, who appears to have been Glenn Saunders during plaintiff's time at Cumberland County Jail.  With regard to plaintiff's § 1983 claims, the warden cannot be liable where, as here, the inmate is already receiving treatment from the prison's medical staff.  See Durmer vs. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993).  With regard to plaintiff's claims regarding his legal mail, the warden may be a proper defendant.  Plaintiff, however, cannot sue the warden in his official capacity, because a claim against a county employee is construed as one against the county, and in order to maintain a claim against the county, plaintiff must allege that the constitutional injury arose as a result of a policy or custom.  Sampson v. Berks County Prison, 171 Fed. Appx. 382, 385 (3d Cir. 2006) (citing Natale v. Camden County Correctional Facility, 318 F.3d 575, 584 (3d Cir. 2003)).  Because plaintiff has not alleged a policy or custom of the county, plaintiff's complaint cannot be construed as against the warden in his official capacity.

Plaintiff, however, may maintain a claim with regard to his legal mail against the warden in his individual capacity. Because, according to plaintiff's complaint and attached documents, Warden Saunders was notified of plaintiff's complaints

about the opening of his legal mail, plaintiff's complaint can be construed as asserting this claim against Warden Saunders in his individual capacity.

The final possible defendant for plaintiff's deliberate indifference claim is the jail doctor who treated him and/or the medical services provider. The medical staff, in particular the medical director, Yousuf Masood, M.D., appears to be the target of plaintiff's claims with regard to his medical care. Similar to the warden, a claim against a prison doctor in his official capacity is actually a claim against the county, and as explained above, that claim fails. Plaintiff, however, may assert a § 1983 claim against the doctor in his individual capacity. Because plaintiff's complaint can be construed as alleging his Eighth Amendment claim against the medical director, Dr. Yousuf Masood, Dr. Masood can be considered a defendant.[2]

### 2. Plaintiff's Eighth Amendment Claim

Plaintiff claims that defendant's failure to provide him with a hernia operation constitutes deliberate indifference to

---

[2]Another way to ameliorate this issue would be to allow plaintiff to file an amended complaint in order to name the proper defendants. Because of this late stage in the proceedings, and the Court's ultimate finding that plaintiff's claims do not survive summary judgment, allowing plaintiff to file an amended complaint would simply delay the inevitable. Instead, the Court has found a basis in plaintiff's complaint to determine that plaintiff has already alleged his claims against the proper defendants.

his serious medical need in violation of the Eighth Amendment.[3]

---

[3]In his complaint, plaintiff also complains of a serious sinus infection that he claims was not being properly treated, but he does not seek any specific remedy or damages with regard to his sinus infection.  To the extent that plaintiff has stated a claim for an Eighth Amendment violation with regard to this ailment, plaintiff's claim must fail.  Plaintiff's sinus issues predate his alleged crime and subsequent confinement at Cumberland County Jail.  (Pl.'s Ex. B to Complaint.)  According to a letter from plaintiff's criminal defense attorney to the Office of the Public Defender dated April 19, 2004, plaintiff had been advised "years ago" that his infection might spread to his brain.  (Id.)  Based on this concern, plaintiff's attorney requested that the Public Defenders' Office pay for an exam by plaintiff's private physician and internist, who were willing to go to the jail. (Id.)  Apparently the state prosecutor consented to the examination by plaintiff's private doctor.  (See Pl. Ex. B, Letter dated April 30, 2004.)  On May 12, 2004, plaintiff's doctor examined him, and made some recommendations for treatment.  (See Pl. Ex. B, Letter dated May 13, 2004.)

The next medical record provided with regard to plaintiff's sinus condition is dated August 10, 2005 and is from a doctor at Eastlantic Diagnostic Institute, who was referred to see plaintiff by plaintiff's private doctor.  (See Pl. Ex. B, Letter dated August 10, 2005.)  That report indicates that there is "no intracranial hemorrhage," "[a]cute or chronic infarction is not present," "[c]ystic or solid masses are not appreciated," "no mass effect," "[v]entricular system and subarachnoid spaces are within normal limits," "[b]rainstream structures and cerebellum show no abnormality," [c]orpus callosum is intact," "[l]esions showing abnormal enhancement are not present," "[i]nflammatory change is seen throughout the left paranasal sinuses," and "[r]emainder of the examination is unremarkable."  (Id.)  The doctor's conclusion was "[n]egative MRI of the brain," and recommendation of a CAT scan for further evaluation of the inflammation.  (Id.)

Plaintiff does not allege, and has not provided any evidence, that between plaintiff's private evaluation on May 12, 2004 and the August 10, 2005 evaluation, plaintiff did not receive medical treatment for his sinus infection such that it rose to the level of deliberate indifference.  Indeed, a comparison of the May 12, 2004 report with the August 10, 2005 report shows an improvement in plaintiff's condition.  Whether that improvement was a result of medical care by Cumberland County Jail or the resolution of the condition on its own is unknown.  Regardless, based on this evidence, and the lack of any

As noted above, the Court has construed this claim as against the Cumberland County Jail's medical director, Dr. Masood, hereinafter referred to as "defendant."

The Eighth Amendment proscription against cruel and unusual punishment requires that inmates are provided with adequate medical care.  To establish a violation of his Eighth Amendment right to adequate medical care, plaintiff must show (1) a serious medical need, and (2) acts or omissions by prison officials that indicated deliberate indifference to that need.  <u>Estelle v. Gamble</u>, 429 U.S. 97, 103-04 (1976); <u>Natale v. Camden County Corr. Facility</u>, 318 F.3d 575, 582 (3d Cir. 2003).

**(1)  Serious medical need**

To prove his claim, plaintiff must first show that he had a serious medical need.  "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'"  <u>Hudson v. McMillian</u>, 503 U.S. 1, 9 (1992).  A serious medical need is a need diagnosed by a physician that the physician believes to require medical treatment, or a need that is "so obvious that a lay person would easily recognize the necessity for a doctor's attention."  <u>Monmouth County Corr. Inst. Inmates v. Lanzaro</u>, 834

---

other allegations or medical records during the year between May 2004 and August 2005, any claim based on plaintiff's sinus infection must be dismissed.

9

F.2d 326, 347 (3d Cir. 1987) (citation omitted); <u>see also</u>
<u>Atkinson v. Taylor</u>, 316 F.3d 257, 273 (3d Cir. 2003).
Additionally, the medical need is considered serious where denial
or delay causes an inmate to suffer a life-long handicap or
permanent loss.  <u>Monmouth County</u>, 834 F.2d at 347.

Here, defendant does not contest that plaintiff required
treatment for a serious medical need.

**(2)  Deliberate indifference**

Plaintiff must also show that defendant's behavior
constituted deliberate indifference to his serious medical need.
"Deliberate indifference" is more than mere malpractice or
negligence; it is a state of mind equivalent to reckless
disregard of a known risk of harm.  <u>Farmer v. Brennan</u>, 511 U.S.
825, 837-38 (1994).  Furthermore, a prisoner's subjective
dissatisfaction with his medical care does not in itself indicate
deliberate indifference.  <u>Andrews v. Camden County</u>, 95 F. Supp.
2d 217, 228 (D.N.J. 2000).  Similarly, "mere disagreements over
medical judgment do not state Eighth Amendment claims."  <u>White v.
Napoleon</u>, 897 F.2d 103, 110 (3d Cir. 1990).  "Courts will disavow
any attempt to second-guess the propriety or adequacy of a
particular course of treatment . . . [which] remains a question
of sound professional judgment."  <u>Inmates of Allegheny County
Jail v. Pierce</u>, 612 F.2d 754, 762 (3d Cir. 1979) (internal
quotation and citation omitted).  Even if a doctor's judgment

concerning the proper course of a prisoner's treatment ultimately
is shown to be mistaken, at most what would be proved is medical
malpractice and not an Eighth Amendment violation.  Estelle, 429
U.S. at 105-06; White, 897 F.3d at 110.

The Third Circuit has found deliberate indifference where a
prison official: (1) knows of a prisoner's need for medical
treatment but intentionally refuses to provide it; (2) delays
necessary medical treatment for non-medical reasons; or (3)
prevents a prisoner from receiving needed or recommended
treatment.  See Rouse, 182 F.3d at 197.  The court has also held
that needless suffering resulting from the denial of simple
medical care, which does not serve any penological purpose,
violates the Eighth Amendment.  Atkinson, 316 F.3d at 266; see
also Monmouth County, 834 F.2d at 346 ("[D]eliberate indifference
is demonstrated '[w]hen . . . prison authorities prevent an
inmate from receiving recommended treatment for serious medical
needs or deny access to a physician capable of evaluating the
need for such treatment.'"); Durmer v. O'Carroll, 991 F.2d 64 (3d
Cir. 1993); White v. Napoleon, 897 F.2d 103 (3d Cir. 1990).

The record does not contain any medical records of
plaintiff's treatment at the Cumberland County Jail for his
hernia condition, other than an August 9, 2005 examination report
by the Cumberland County Medical Director.  The examination
records of plaintiff's private physicians, as well as the time

line of events surrounding plaintiff's incarceration, trial, sentencing and transfer, however, demonstrate that defendant was not deliberately indifferent to plaintiff's serious medical condition.

On April 19, 2004, plaintiff's criminal defense attorney wrote to the Office of the Public Defender with regard to plaintiff's hernia, which plaintiff's counsel reported was causing plaintiff a great deal of pain.  Counsel requested the Public Defenders' Office to pay for a private medical examination as a second opinion to the "jail physician" who "says [plaintiff] does not require surgery."  (Pl. Ex. B to Complaint, Letter dated April 19, 2004.)  It is unclear whether the Public Defenders' Office paid for it, but the private examination was agreed to by the prosecutor, and it was conducted on May 12, 2004.  John Ahrens, M.D. examined plaintiff, and found the following:

> Mr. Severs' other main medical issue is the presence of a left inguinal hernia.  Historically, this hernia has always been reducible, meaning that it would not be an urgent medical problem; but it appears to be protruding from his abdomen more and more often with left effort and with greater difficulty maneuvering it back into position.  This suggests that there is a possibility that the hernia sac could become strangulated resulting in an emergency medical condition requiring emergency surgery.  If the need for emergency surgery were not recognized, this could result in a life threatening incident of gangrene within the abdominal cavity.

(Pl. Ex. B to Complaint, Letter dated May 13, 2004.)  As a result of these observations, Dr. Ahrens recommended a general surgical

evaluation to assess the need for surgical hernia repair.  (Id.)

As of June 29, 2004, it appears that defendant did not provide plaintiff with a surgical evaluation as recommended by his private physician, because plaintiff's attorney asked the warden and jail physician to respond with Dr. Ahrens' recommendation within one week, or counsel would file a lawsuit. (Pl. Ex. B to Complaint, Letter dated June 29, 2004.)

It is unclear what occurred over the next year following plaintiff's counsel's letter, but on August 2, 2005, plaintiff was evaluated by a private surgeon, Nauveed Iqbal, M.D.  Dr. Iqbal reported that plaintiff told him that his hernia "does not reduce" and "has been painful and sore over the last few weeks or so to the extent where he feels that there is always constant pressure."  (Pl. Ex. B to Complaint, Letter dated August 2, 2005.)  Dr. Iqbal reported that he tried to reduce the hernia, but he was unable to.  Because of this, Dr. Iqbal concluded that it was "an incarcerated hernia which is nonreducible and sometimes these herniae actually end up being strangulated and gangrenous leading to an acute surgical procedure with major problems because of dead or dying bowel."  (Id.)

Dr. Iqbal also reported that plaintiff stated he was scheduled for surgery on August 15, 2005, but that because plaintiff's trial was scheduled for that day, his surgery was being postponed.  Dr. Iqbal reported that he had "no problems

postponing the [surgery] to September as long as everybody
understands that the risk of strangulation in an incarcerated
hernia is significantly higher than a hernia which can be
reduced. . . . If the judge decides that the trial date is more
important than fixing the hernia, that is fine with me and I will
take care of this hernia after the courts get done with him."
(Id.)  Dr. Iqbal did caution, however, that if the hernia
strangulated, plaintiff would need an immediate procedure.  (Id.)

Shedding more light on the situation is an August 12, 2005
letter from plaintiff's criminal defense attorney to county
counsel for Cumberland County.  Plaintiff's counsel informed
county counsel that plaintiff had been suffering from the hernia
for the past year, but it had always been able to be reduced.
(Pl. Ex. B to Complaint, Letter dated August 12, 2005.)
Plaintiff's counsel informed county counsel that Dr. Iqbal's
examination confirms that the hernia could no longer be reduced,
and that surgery was scheduled for August 15, 2005, but that it
had to be cancelled "as Judge Farrell would not delay the trial."
(Id.)  Plaintiff's counsel also informed county counsel that
Judge Farrell anticipated a "lapse of time of about one week"
between the end of the trial around mid-September and sentencing
if there was a conviction.  (Id.)  Plaintiff's counsel suggested
that plaintiff may be able to schedule the surgery during this
lapse of time, and he asked that the county pay for the $1,500

14

surgery.  (Id.)

Also occurring during this time, Cumberland County Jail's medical director, Yousuf Masood, M.D., examined plaintiff on August 9, 2005.  (Def. Ex. B)  Dr. Masood found that plaintiff had "a left inguinal hernia, reducible, not strangulated.  No abdominal contents palpated within the hernia."  (Id.)  Dr. Masood concluded that "[t]here is no surgical emergency at this time."  (Id.)

Plaintiff never received hernia surgery while incarcerated at Cumberland County Jail.  After being found guilty, plaintiff was sentenced on October 21, 2005 and then transferred from Cumberland County Jail to New Jersey State Prison in Trenton on November 10, 2005.  In his recent submissions to the Court, plaintiff states that he has received hernia surgery while at New Jersey State Prison, but he does not indicate when that surgery was performed, or whether the surgery was provided by the state or performed privately.

To prove his case for an Eighth Amendment violation, plaintiff must show more than mere malpractice or negligence--he must show that defendant committed reckless disregard of a known risk of harm to plaintiff.  Plaintiff must also show that defendant intentionally refused to provide, delayed, or prevented plaintiff's necessary medical treatment.  Moreover, plaintiff's subjective dissatisfaction with his medical care does not

15

indicate deliberate indifference, and even if a doctor's judgment concerning the proper course of plaintiff's treatment ultimately is shown to be mistaken, at most what would be proved is medical malpractice and not an Eighth Amendment violation.

The record before the Court demonstrates that plaintiff's own medical doctors agreed that if plaintiff's hernia remained reducible, surgery was not necessary.  From May 12, 2004 when Dr. Ahrens evaluated plaintiff until August 2, 2005 when Dr. Iqbal evaluated plaintiff, plaintiff's hernia remained in a reducible state.  Thus, plaintiff not receiving hernia surgery during this time could not have been deliberate indifference on the part of Cumberland County Jail, when plaintiff's own doctors did not require it.

Even when plaintiff's hernia became nonreducible according to his private physician in August 2005, the fact that plaintiff did not receive surgery prior to his transfer to state prison also does not constitute deliberate indifference.  When Dr. Iqbal diagnosed plaintiff with an incarcerated hernia in the beginning of August 2005, plaintiff's doctor did not feel that it was a medical emergency that plaintiff receive surgery immediately.  Dr. Iqbal stated that it was "fine with him" if the surgery was put off until after plaintiff's trial.  According to Dr. Iqbal, immediate surgery would be required if the hernia became strangulated, and there was a threat of strangulation, but Dr.

16

Iqbal had "no problems" post-posting the surgery.

Additionally, it was not Cumberland County Jail that denied plaintiff's surgery, but the state trial judge presiding over plaintiff's criminal trial.  There is no evidence that defendant would have prevented plaintiff from having his scheduled surgery on August 15, 2005 if the trial judge had adjourned the trial date.[4]  Furthermore, Dr. Masood, the medical director at Cumberland County Jail, disagreed with Dr. Iqbal's medical opinion, and on August 9, 2005 found plaintiff's hernia to still be reducible and not a surgical emergency.  This amounts to a difference in medical opinion, not evidence of deliberate indifference.

Finally, it is unclear from the record why plaintiff did not receive hernia surgery prior to being transferred to state prison in November 2005, but it could be attributable to the trial and sentencing schedule, the availability of Dr. Iqbal, the fact that Dr. Masood did not think it was medically necessary, or any combination of factors.  It is plaintiff's burden to prove that

---

[4]Based on plaintiff's counsel's letter to county counsel, even though plaintiff had surgery scheduled with his private physician, Dr. Iqbal, on August 15, 2005, it is unclear who was going to pay for the surgery.  It can be inferred from that letter that plaintiff could pay for his own surgery if he wished. The dispute for the Eighth Amendment violation analysis is whether defendant's failure to provide plaintiff's surgery constitutes deliberate indifference, not whether plaintiff's private doctor does not perform the surgery because of a judge's trial calendar.

his lack of surgery was a result of defendant's reckless disregard to plaintiff's medical condition, and he has failed to do so.

Based on the foregoing, defendant cannot be held to have violated plaintiff's Eighth Amendment rights because there is no evidence that defendant acted with deliberate indifference to plaintiff's condition.  The only time surgery was recommended by plaintiff's private doctor was in August 2005, and at that same time, the jail's medical director concluded that it was not necessary.  This difference of medical opinion does not amount to deliberate indifference.  Consequently, summary judgment must be entered in favor of defendant on plaintiff's Eighth Amendment violation claim.[5]

### 3.   Plaintiff's claim regarding legal mail

Plaintiff claims that his legal mail was opened outside his presence in violation of his First Amendment right to privacy. As explained above, the Court has construed this claim to be

---

[5]Through Cumberland County Jail's answer, Dr. Masood has effectively pleaded the defense of qualified immunity.  (See Answer, Affirmative Defenses ¶ 12.)  The Court does not need to undertake the qualified immunity analysis because plaintiff has not established that Dr. Masood violated plaintiff's constitutional rights.  See Saucier v. Katz, 533 U.S. 194, 200-01 (2001) (explaining that when a defendant claims qualified immunity, a court must first determine if the plaintiff's allegations are sufficient to establish the violation of a federal constitutional or statutory right, and if not, the inquiry stops there).

against Warden Saunders.

When plaintiff was incarcerated at the Cumberland County Jail, the New Jersey State regulation governing legal mail provided, in relevant part,

> Inspection of incoming legal correspondence
>
> (a) Incoming legal correspondence shall be opened and inspected for contraband only.
>
> (b) Incoming legal correspondence shall not be read or copied. The content of the envelope may be removed and shaken loose to ensure that no contraband is included. After the envelope has been inspected the correspondence shall be given to the inmate.

N.J. Admin. Code § 10A:18-3.4.

In 2006, after plaintiff was transferred out of Cumberland County Jail, the Third Circuit found this regulation to be unconstitutional. Jones v. Brown, 461 F.3d 353 (3d Cir. 2006). The court explained,

> A state pattern and practice, or, as is the case here, explicit policy, of opening legal mail outside the presence of the addressee inmate interferes with protected communications, strips those protected communications of their confidentiality, and accordingly impinges upon the inmate's right to freedom of speech. The practice deprives the expression of confidentiality and chills the inmates' protected expression, regardless of the state's good-faith protestations that it does not, and will not, read the content of the communications. This is so because "the only way to ensure that mail is not read when opened . . . is to require that it be done in the presence of the inmate to whom it is addressed."

Jones, 461 F.3d at 359 (citation omitted). Following this decision, the New Jersey state regulation was amended, and it now

provides, in relevant part, that "[i]ncoming legal correspondence shall be opened and inspected only in the presence of the inmate to whom it is addressed."  N.J. Admin. Code § 10A:31-19.7(b).

Plaintiff claims that his First Amendment rights were violated because defendant did not open his legal mail in front of him, which is required by the current regulation.  Plaintiff does not recognize that the regulation that was in existence at the time he was incarcerated at Cumberland County Jail permitted legal mail to be opened outside his presence.  This, however, does not automatically absolve defendant from liability, because the opening of plaintiff's legal mail outside his presence was ultimately held to be unconstitutional.  Thus, in order to determine defendant's liability, the Court must undertake the qualified immunity analysis.

When a defendant claims qualified immunity, a court must first determine if the plaintiff's allegations are sufficient to establish the violation of a federal constitutional or statutory right.  Wilson v. Layne, 526 U.S. 603, 609 (1999) (citation omitted).  If the plaintiff's allegations meet this threshold, a court must next determine whether the right that the defendant's conduct allegedly violated was a clearly established one, about which a reasonable person would have known.  Id.  If the plaintiff's allegations fail to satisfy either inquiry, then a defendant is entitled to qualified immunity and dismissal of the

case.  <u>Doe v. Delie</u>, 257 F.3d 309, 314-15 (3d Cir. 2001).

Here, even though the opening of plaintiff's legal mail outside his presence was held to be unconstitutional, defendant could not have known at that time that he was violating plaintiff's constitutional rights.  Defendant was following a state regulation that allowed a jail to open prisoner legal mail outside the prisoner's presence, the Third Circuit had not yet definitively ruled on the issue, and the state had not yet amended the regulation.  Because defendant could not have reasonably known that he was violating plaintiff's First Amendment rights, defendant is entitled to qualified immunity.  See <u>Booth v. King</u>,  228 Fed. Appx. 167, 171 (3d Cir. 2007) (holding that the defendant was entitled to qualified immunity because an inmate's right to privacy in legal mail was not clearly established when the defendants opened the plaintiff's mail outside of his presence ); <u>Jones</u>, 461 F.3d at 364-65 (3d Cir. 2006) (same).[6]  Consequently, summary judgment must be entered in favor of defendant on plaintiff's legal mail claim.

**4.   Plaintiff's motion to amend his complaint**

Plaintiff has filed a motion to amend his complaint to

---

[6]Plaintiff has provided to the Court letters his criminal defense attorney sent to the warden requesting that his legal mail be opened in plaintiff's presence.  Even taking as true that the warden did not comply with plaintiff's request, that the warden did not heed a prisoner's attorney's informal request does not amount to a constitutional violation.

withdraw his request for surgery and an investigation into the opening of his legal mail, and to add specific damage amounts for his constitutional violation claims.  Because the Court has found that summary judgment in favor of defendant must be entered on both of plaintiff's claims, plaintiff's motion to amend is moot.

### **CONCLUSION**

For the reasons expressed above, the defendants, as construed by the Court, are entitled to summary judgment on all of plaintiff's claims against them.  An appropriate Order will be entered.


Dated: March 19, 2008              s/ Noel L. Hillman

At Camden, New Jersey              NOEL L. HILLMAN, U.S.D.J.